[Docket No. 24]

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
## CAMDEN VICINAGE

|  |  |  |
|---|---|---|
| ATLANTIC ER PHYSICIANS TEAM, PEDIATRICS ASSOC., PA, et al., | : : : : | No. 20-20083 (RMB/AMD) |
| Plaintiffs, | : : | |
| v. | : : | **OPINION** |
| UNITEDHEALTH GROUP, INC., et al., | : : : | |
| Defendants. | : : | |

**RENÉE MARIE BUMB, District Judge**

This matter comes before the Court upon the Motion to Remand filed by Plaintiffs Atlantic ER Physicians Team Pediatric Associates, PA, Emergency Care Services of NJ, PA, Emergency Physician Associates of North Jersey, PC, Emergency Physician Associates of South Jersey, PC, Emergency Physician Services of New Jersey, PA, Middlesex Emergency Physicians, PA, and Plainfield Emergency Physicians, PA (collectively, "Plaintiffs"). [Docket No. 24.] Plaintiffs argue that this matter should be remanded because (1) removal was procedurally improper in that all joined and served defendants did not consent to removal within thirty days of service, and (2) there is no federal question jurisdiction. Additionally, Plaintiffs request attorneys' fees, arguing that the removal was in bad faith. For the

reasons set forth below, the Court will grant the motion to remand and reserve on the issue of attorney's fees.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

On November 2, 2020, Plaintiffs, New Jersey-based healthcare providers, filed their complaint ("Complaint") in the Civil Division of the Superior Court of New Jersey, Gloucester County Law Division, against Defendants UnitedHealth Group, Inc., UnitedHealthcare Insurance Co., UnitedHealthcare of New Jersey, Inc. ("UHC-NJ" and, collectively, the "United Defendants"), and Multiplan, Inc. ("Multiplan"). [Docket No. 2 at 1.] In general, the within dispute concerns the alleged underpayment by the United Defendants to Plaintiffs for emergency healthcare which Plaintiffs provided to patients covered by health insurance plans funded or administered by Defendants. [Id. at 2–3.] As alleged, the United Defendants had medical group Participation Agreements (the "Participation Agreements") with Plaintiffs, through which the United Defendants agreed to pay Plaintiffs agreed-upon rates for emergency treatment of the patients covered by the health insurance funds funded or administered by the United Defendants. [Id. at 2.] In July 2019, the United Defendants notified Plaintiffs they were terminating the Participation Agreements effective May 15, 2020. [Id. at 12.] Subsequent to this cancellation, patients covered by Defendants continued seeking and receiving treatment from Plaintiffs. In the first 45 days after the Participation Agreements' cancellation, 1,520 such patients received treatment from Plaintiffs, and of those, Plaintiffs allege that the United Defendants underpaid Plaintiffs for services provided

to 1,215 patients. [Id. at 3.] Plaintiffs allege the number of patients for which United Defendants have underpaid continues to grow by the day. [Id. at 4.]

Plaintiffs assert various state law claims against the United Defendants for quantum meruit, a violation of New Jersey Health Claims Authorization, Processing and Payment Act, tortious interference, and a violation of NJ RICO (N.J.S.A. 2C:41-2(c) & 2C:41-2(d)). Plaintiffs also allege that the United Defendants partnered with Defendant Multiplan, a cost-management company, wherein Multiplan falsely represented to healthcare providers and patients that one of its product's processes resulted in a fair price accepted by providers as full payment for services. [Id. at 4–5.] The process, Plaintiffs allege, in part, does not use the information it purports to use.

On December 21, 2020, the United Defendants filed a Notice of Removal. [Docket No. 1.] Defendant Multiplan consented to removal. [Id. ¶ 5.] The Notice of Removal based this Court's jurisdiction on diversity of citizenship and federal question. [Id. at 3–15.] As to diversity jurisdiction, Defendants contended that UHC-NJ, the only non-diverse Defendant named in the Complaint, was a defunct corporation that had been fraudulently joined as a defendant. [Id. ¶¶ 6, 11.] As to federal question, the United Defendants asserted that Plaintiffs' state law claims are entirely preempted by the Employee Retirement Income Security Act of 1974 ("ERISA"). [Id. at 7.]

On January 19, 2021, pursuant to this Court's Individual Rules and Procedures, Plaintiffs filed a letter seeking to file a motion to remand. [Docket No. 17.] In response, the United Defendants advised that they would not oppose

Plaintiffs' amendment of their Complaint to name Oxford Health Plans (NJ), Inc. ("Oxford-NJ") as a defendant. On February 2, 2021, Plaintiffs filed the Amended Complaint. [Docket No. 23.] As a result of the amendment, both sides agree that the naming of Oxford-NJ as a defendant eliminated diversity jurisdiction as a basis for this Court's jurisdiction. Defendants maintain, however, that this Court nonetheless has federal question jurisdiction based on complete ERISA preemption. Because this issue is now the crux of the motion to remand, the Court turns to an analysis of its federal question jurisdiction.

## II.   ANALYSIS

### 1.   Federal Question – Motion to Remand

A claim arises under federal law where the "well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Tr. for S. Cal., 463 U.S. 1, 27-28 (1983). A defendant may remove "any civil action brought in a State court of which the district courts of the United States have original jurisdiction." 28 U.S.C. § 1441(a). But, "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c). Here, the United Defendants as the removing parties bear the burden of demonstrating that the case is properly before the federal court. See Frederico v. Home Depot, 507 F.3d 188, 193 (3d Cir. 2007); see also Abels v. State Farm Fire & Cas. Co., 770 F.2d 26, 29 (3d Cir. 1995). "Removal statutes are to be strictly

construed, with all doubts to be resolved in favor of remand." Brown v. Jevic, 575
F.3d 322, 326 (3d Cir. 2009) (citing Batoff v. State Farm Ins. Co., 977 F.2d 848, 851
(3d Cir. 1992)). "Because lack of jurisdiction would make any decree in the case void
and the continuation of the litigation in federal court futile, the removal statute
should be strictly construed and all doubts should be resolved in favor of remand."
Abels, 770 F.2d at 29. "It is well settled that district courts should remand close or
doubtful cases for two reasons. First, remand will avoid the possibility of a later
determination that the district court lacked jurisdiction and, secondly, remand is
normally to a state court which clearly has jurisdiction to decide the case."
Glenmede Tr. Col v. Dow Chem. Co., 384 F.Supp. 423, 433–34 (E.D. Pa. 1974).

        In certain cases, a complaint that presents only state law claims and no other
bases for federal jurisdiction, such as the Amended Complaint here, may nonetheless
be removed to federal court pursuant to the doctrine of complete preemption. See
Pascack Valley Hosp., Inc. v. Local 464A UFCW Welfare Reimbursement Plan, 388
F.3d 393, 399 (3d Cir. 2004) (citing Aetna Health Inc. v. Davila, 542 U.S. 200, 207
(2004)). Complete preemption "recognizes that Congress may so completely pre-
empt a particular area that any civil complaint raising this select group of claims is
necessarily federal in character." Pascack, 388 F.3d at 399 (quoting Metropolitan
Life Ins. Co. v. Taylor, 481 U.S. 58, 63–64 (1987)). ERISA's civil enforcement
mechanism, Section 502(a), "is one of those provisions with such extraordinary pre-
emptive power that it converts an ordinary state common law complaint into one
stating a federal claim for purposes of the well-pleaded complaint rule" and permits

removal. N.J. Carpenters & the Trs. Thereof v. Tishman Constr. Corp. of N.J., 760 F.3d 297, 303 (3d Cir. 2014) (citations omitted).

Defendants argue that Plaintiffs' state law claims are completely preempted by ERISA such that they may be removed to federal court. To determine if Defendants are correct, the Court applies the two-pronged Pascack test: (1) could the plaintiff have brought the claim under Section 502(a); *and* (2) does another independent legal duty support the plaintiff's claim. Pascack, 388 F.3d at 400. With respect to the first prong of the Pascack test—whether plaintiff could have brought its claim pursuant to Section 502(a) of ERISA—the court considers: "(a) whether the plaintiff is the *type* of party that can bring a claim pursuant to Section 502(a)(1)(B), and (b) whether the *actual claim* that the plaintiff asserts can be construed as a colorable claim for benefits pursuant to Section 502(a)(1)(B)." Progressive Spine & Orthopaedics, LLC v. Anthem Blue Cross Blue Shield, No. 17-536 (KM/MAH), 2017 WL 4011203, at *5 (D.N.J. Sept. 11, 2017) (emphasis in original). With respect to the second prong of the Pascack test, "a legal duty is 'independent' if it is not based on an obligation under an ERISA plan, or if it 'would exist whether or not an ERISA plan existed.'" N.J. Carpenters, 760 F.3d at 303 (quoting Marin Gen. Hosp. v. Modesto & Empire Traction Co., 581 F.3d 941, 950 (9th Cir. 2009)).

To support their position, Defendants argued in their Notice of Removal and opposition that Plaintiffs, in submitting claims to the United Defendants, represented that Plaintiffs had been assigned benefits under the health plans. [Docket No. 1 ¶ 30; Docket No. 1-6 ¶¶ 5-8; Docket No. 27 at 6.] The United Defendants provide as

6

evidence fourteen Health Insurance Claim Forms (the "Claim Forms") that Plaintiffs submitted to United Defendants regarding healthcare Plaintiffs provided to their patients. These standardized Claim Forms include a Box 13, which, according to the United Defendants, include authorization and assignment acknowledgements. [Docket No. 1-6 ¶ 5.] Defendants contend that by these Claim Forms, "Plaintiffs represented that benefits were assigned to them on the electronically submitted forms, which indicate that the particular health care provider submitting the claim obtained a signed authorization and an assignment of benefits from the plan member or beneficiary, allowing the provider to receive benefits under the applicable employee benefit plans and federal plans." [Id.] The United Defendants allege that, by stepping into the shoes of their patients via assignment of benefits, the Plaintiffs obtained the derivative right to sue on behalf of their patients under ERISA. [Docket No. 28 at 12.] In essence, the United Defendants ask the Court to surmise from fourteen checked boxes (1) that the patients have assigned their ERISA interests to the Plaintiffs, (2) that these assignments are valid and give Plaintiffs standing to bring claims under ERISA, and (3) that, assuming the prior two points are correct,

assignment regarding the ERISA plans for these fourteen patients should hold true as to the remainder of Plaintiffs' more than 1,215 alleged instances of underpayment.[1]

Plaintiffs counter that the United Defendants have not established that Plaintiffs could have brought their claims under ERISA Section 502(a) for two reasons. First, Plaintiffs are not ERISA plan participants or beneficiaries. [Docket No. 24-1 at 19.] Second, Plaintiffs' claims are neither based on alleged assignments nor have Defendants "attempted to address whether the health plans [at issue] even permit such assignments." [Docket No. 29 at 7.] In support, Plaintiffs cite to N. Jersey Brain & Spine Ctr. v. United Health Ins. Co., No. 18-15631 (SDW/LDW), 2019 WL 6317390, at *2 (D.N.J. Nov. 25, 2019), where the same United Defendants were a party and presented a similar ERISA preemption argument, which the Court rejected. [Docket No. 24-1 at 19.]

Plaintiffs have the better argument. The Third Circuit concluded in Plastic Surgery Ctr., P.A. v. Aetna Life Ins. Co., 967 F.3d 218, 236 (3d Cir. 2020), that out-of-network healthcare providers were not parties to ERISA plans (citing N. Jersey Brain & Spine Ctr. v. Aetna, Inc., 801 F.3d 369, 372 (3d Cir. 2015)). The Third

---

[1] Multiplan asserts similar arguments. Multiplan points to Prestige Inst. for Plastic Surgery, P.C. v. Keystone Healthplan E., No. 20-496 (KM/ESK), 2020 WL 7022668, at *4 (D.N.J. Nov. 30, 2020), in which this Court recognized that a valid assignment of benefits by a plan participant or beneficiary transferred to such provider ERISA standing. This additional argument merits little discussion. Multiplan fails to recognize, however, that in Prestige, the plaintiffs' assignment was valid because it fell "within the literal wording of the exception contained in the anti-assignment provision" of the ERISA plan. Prestige, 2020 WL 7022668, at *6.

8

Circuit further noted that assignments have allowed healthcare providers to stand in the shoes of ERISA plan participants or beneficiaries and bring suit for non-payment under Section 502(a), but plans have increasingly included anti-assignment provisions. Plastic Surgery Ctr., 967 F.3d at 228. Generally, for out-of-network providers, such provision signals a dead end in pursuing relief under Section 502(a). Id. at 228–29. Indeed, as in North Jersey Brain, Defendants here have not come forward with any relevant health insurance plans to allow the Court to evaluate whether these plans contain anti-assignment provisions. "Vague references to . . . purported assignment of benefits . . . fail to conclusively establish that [plaintiff] has a complete assignment of its patients' health insurance benefits." N. Jersey Center for Surgery, P.A. v. Horizon Blue Cross Blue Shield of NJ, Inc., No. 07-4812 (HAA), 2008 WL 4371754, at *4 (D.N.J. Sept. 18, 2008). It is Defendants who bear the "heavy burden of persuasion" when confronted with a motion to remand. Batoff, 977 F.2d at 851. Without any "affirmative evidence," federal courts are presumed not to have jurisdiction. Nuveen Municipal Tr. v. WithumSmith Brown, P.C., 692 F.3d 283, 293 (3d Cir. 2012). Here, the absence of affirmative evidence leaves this Court with grave doubt that Plaintiffs would have standing to sue under ERISA. Such doubt augers in favor of remand.

As mentioned, *North Jersey Brain* is particularly on point. See 2019 WL 6317390. In that case, the defendants included UHIC and Oxford-NJ, represented by the same counsel as in the present case. Id. Both defendants argued that the state contract claims alleged by out of network healthcare providers were preempted by

ERISA. Id. at *1. At dispute were payments for provision of medical services provided to twenty-seven patients, members, or beneficiaries of the defendants. Id. The record suggested that the plaintiff had "enforceable assignments" for "only a few" of these patients. Id. at *3. For twenty of the patients, there were no allegations that the plaintiffs had valid assignment. Id. Because, per Pascack, the defendants bore the burden of establishing the existence of an assignment to show ERISA preempted state law, the Court concluded that the defendants had failed to meet their burden. Id. at *4.

This Court holds the same here. On the record before it, the Court cannot find that Defendants have met their burden. In essence, Defendants ask this Court to deduce that there must be assignments of benefits from patients under the terms of the plans. [See Docket No. 28, at 12 ("Plaintiffs appear to have obtained such assignments of benefits . . . .").] Yet, there is nothing before the Court to determine the validity of such assignments. If the plans include anti-assignment provisions, the premise for Defendants' removal crumbles. "If" means doubt; doubt means remand. See Jevic, 575 F.3d at 326.

Moreover, like North Jersey Brain, the Court finds that Plaintiffs' claims are related to payments received premised on implied agreements and representations arising in the course of the parties' dealings. For these reasons, Defendants have failed to meet their burden to show that the Plaintiffs have standing to bring an ERISA claim under Section 502(a).

As a result, Defendants have failed to prove the first prong of <u>Pascack</u>.  As to the second prong of the <u>Pascack</u> test, the Court agrees that other independent legal duties support Plaintiffs' claims. Although Defendants insist that Plaintiffs' quantum meruit claim relies upon the health plans administered by the United Defendants and out-of-network health benefits allowed under their terms, the claim is based on Defendants' quasi contractual duty to reimburse Plaintiffs for the reasonable value of the services. The RICO claims address alleged misleading statements in furtherance of a scheme to defraud. Finally, the tortious interference claim against Multiplan is based on its alleged false and misleading statements designed to "paper over" the united Defendants' failure to pay the reasonable value of their services.

In short, for the foregoing reasons Defendants' arguments for ERISA preemption fail and this Court lacks federal question jurisdiction.

### 2.    Motion for Attorney's Fees

What remains are Plaintiffs' motions for remand based on a procedurally improper removal and attorney's fees. Because the Court has found federal question jurisdiction lacking, and diversity jurisdiction is lacking as a result of the Amended Complaint, the Court need not decide the impropriety of the removal based on failure to join all defendants. The facts that form the basis for such motion, however, are relevant to resolving Plaintiffs' request for fees. In this regard, the United Defendants asserted in their removal petition that UHC-NJ (the only non-diverse party at the time of removal) ceased operations after it merged with "another entity" in 2006, and thus, removal on diversity grounds was proper because UHC-NJ was

defunct at the time of removal. [Docket No. 1 ¶ 12.] Moreover, Oxford-NJ was not a defendant at the time of removal and therefore did not need to consent. [Docket No. 28 at 7.] In short, the United Defendants argue that the Complaint contained no allegations against Oxford-NJ, and they should not be forced to read Plaintiffs'—the masters of the Complaint—mind. Because the Complaint named UHC-NJ, and not Oxford-NJ, the United Defendants argue Oxford-NJ was not put on notice that it was a real party in interest. [Id.]

Plaintiffs contend that Defendants' removal on diversity jurisdiction was made in bad faith. Specifically, Plaintiffs argue that although UHC-NJ was misnamed in the original Complaint, Defendants "artfully evaded" if not "outright misrepresented" the fact that Oxford-NJ merged into UHC-NJ in 2006. [Docket No. 24-1 at 27.] Specifically, Plaintiffs argue that the United Defendants withheld the fact that UHC-NJ had merged into Oxford-NJ in 2006 and Oxford-NJ is an active subsidiary of UHG. [Id. at 28.] Under New Jersey law, Plaintiffs press, the surviving corporation of a merger steps into the shoes of the merged entity, and thus Defendants knew that Oxford-NJ had stepped into the shoes of UHC-NJ. [Id. at 13.] In other words, Plaintiffs' naming of UHC-NJ as a defendant instead of Oxford-NJ was merely a misnomer. Plaintiffs offer a printout of the State of New Jersey Department of Banking and Insurance website showing that as of November 18, 2020, UHC-NJ was listed as a Selective Contracting Arrangement affiliate of UHG.

[Docket No. 24-3, Ex. B.] Plaintiffs also focus the Court's attention to the Affidavit

of Service filed on November 24, 2020, long before removal.  The Affidavit provides:

> Oxford Health Plans NJ, Inc.
>  f/k/a UnitedHealthcare of New Jersey, Inc. c/o
> Corporation Trust Company, Registered Agent

[Id., Ex. E.]

To put it succinctly, something is amiss. Perhaps at the end of the day both

sides share the blame. Plaintiffs should have been either more precise in their

Complaint drafting; Defendants should have been more forthright or careful.[2] That

analysis awaits another day. In fairness, the Court does not have the benefit of the

Defendants' response to Plaintiffs' arguments. The Court will therefore require

further briefing, and possibly an evidentiary hearing in the event Plaintiffs desire to

pursue their motion.[3]

## III.    CONCLUSION

For the above-stated reasons, the Court holds that it lacks subject matter

jurisdiction based on federal question. Accordingly, Plaintiffs' motion to remand will

---

[2] Plaintiffs make no argument that Defendants' removal based on federal question was in bad faith, leaving only the issue of fees related to diversity jurisdiction.

[3] Within ten days of this order, Plaintiffs shall advise whether they wish to pursue their motion for attorney's fees. If so, Defendants shall file a sur-reply within ten days of such notice. The Court will not enter an order of remand until this issue is resolved.

be granted. The Court reserves as to Plaintiffs' motion for attorney's fees and will direct further briefing and a possible hearing.

September 30, 2021                          s/Renée Marie Bumb
Date                                        Renée Marie Bumb
                                            United States District Judge